Strafford
No. 82-394

JAMES HURLEY

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

DARREL D. LYNCH, JR.

v.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE

August 31, 1983

*Boynton, Waldron, Doleac, Woodman & Scott*, of Portsmouth, and *Griffin, Harrington, Brigham, Ritzo & Swanson P.A.*, of Portsmouth (*Charles B. Doleac* and *Dale T. Swanson* on the brief, and *Mr. Doleac* orally), for the plaintiff James Hurley.

*Ouellette, Hallisey, Dibble & Tanguay*, of Dover (*William L. Tanguay* on the brief and orally), for the plaintiff Darrel D. Lynch, Jr.

*Sulloway, Hollis & Soden*, of Concord (*James L. Kruse* and *James E. Owers* on the brief, and *Mr. Kruse* orally), for the defendant.

BATCHELDER, J. The question presented in this appeal of two cases consolidated for trial is whether our comparative negligence statute, RSA 507:7-a (Supp. 1979), permits a plaintiff in a multiple defendant negligence action to recover so long as the plaintiff's negligence does not exceed the total causative negligence of all the defendants. We hold that it does.

The facts which give rise to this appeal may be simply stated. On October 1, 1976, the plaintiffs, James Hurley and Darrel Lynch, Jr., participated, along with other youths, in a prank following a soccer game at Oyster River High School. The prank entailed the placement of some thirty-foot-long aluminum irrigation pipes across Coe Drive, a roadway bordering the soccer field, over which the visiting team's bus was expected to travel. The passengers alighted from the bus, however, and removed the pipes from the roadway, and the bus proceeded without incident. While returning the pipes to their orig-

inal location, the plaintiffs and another youth, for no apparent reason, raised one of the pipes to a vertical position and in so doing, caused it to come in contact with a 34,500-volt electric transmission line owned and maintained by the defendant Public Service Company of New Hampshire (PSNH). As a result of the transfer of electricity to the aluminum pipe which they were holding, both Hurley and Lynch suffered severe burns and sustained permanent injuries.

Subsequently, the plaintiffs instituted the underlying actions against PSNH and the Oyster River School District, alleging causal negligence on the part of PSNH in maintaining the overhead transmission line next to the school athletic field, and in failing to warn the public of the dangers of the line, as well as a breach of safety standards. The claims against the defendant school district alleged causal negligence in the design, construction and supervision of the soccer field, both generally and upon the day of the accident, in particular. The plaintiffs also brought counts against New England Telephone Company which they voluntarily non-suited with prejudice prior to trial.

The comparative negligence statute, on which this appeal is based, provides in relevant part:

"Contributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury, or property damage, if such negligence was not greater than the causal negligence of the defendant, but the damages awarded shall be diminished, by general verdict, in proportion to the amount of negligence attributed to the plaintiff; provided that where recovery is allowed against more than one defendant, each such defendant shall be liable for that proportion of the total dollar amount awarded as damages in the ratio of the amount of his causal negligence to the amount of causal negligence attributed to all defendants against whom recovery is allowed."

RSA 507:7-a (Supp. 1979).

The Trial Court (*Temple*, J.) instructed the jury that in determining liability under New Hampshire's comparative negligence statute, RSA 507:7-a (Supp. 1979), it was the jury's duty to compare the negligence of each plaintiff to the combined or aggregate negligence of the two defendants. The trial court submitted to the jury a special verdict form which provided, in part, that it was the jury's obligation to determine damages if the percent of negligence attributed to the defendants was fifty percent or more "either separately or added together."

The trial court specifically instructed the jury, with respect to RSA 507:7-a (Supp. 1979), that "where recovery is allowed against more than one defendant, then each defendant shall be liable for that proportion of that total dollar amount of damage in [the] ratio [of] the amount of his or its causal negligence to the amount of causal negligence contributed [by] all defendants against whom recovery is allowed." The judge also used an illustrative example of comparative fault, and concluded this phase of the jury instructions by stating: "[F]or a plaintiff to recover under comparative negligence then the plaintiff's fault cannot exceed that of the defendant, or defendants in this case."

The jury returned its special verdict forms, making the following findings of negligence in each case:

| Party | Percent of Fault |
|---|---|
| Hurley (Plaintiff) | 50% |
| School District (Defendant) | 25% |
| PSNH (Defendant) | 25% |
| Total | 100% |
| Lynch (Plaintiff) | 50% |
| School District (Defendant) | 25% |
| PSNH (Defendant) | 25% |
| Total | 100% |

As a result of these findings, the jury found that Hurley incurred $125,000 in damages and that Lynch incurred $30,000 in damages. PSNH excepted to the trial judge's instructions and the special verdict form, and also moved for a judgment notwithstanding the verdict. The motion was denied and PSNH appealed. The school district however settled with the plaintiff prior to the appeal's being heard.

The company contended at trial, as it does on appeal, that a defendant is entitled to have its fault compared individually to each plaintiff without regard to the fact that there is another defendant or other named defendants. PSNH argues that RSA 507:7-a (Supp. 1979) does not permit a plaintiff recovery against one of the defendants who has been found to be less negligent than the plaintiff.

Much has been written about the efficacy of comparative negligence statutes, such as RSA 507:7-a (Supp. 1979), which modify the common-law concept of contributory negligence so as to mitigate the harshness and irrationality of deeming any negligence on the part of the plaintiff to be a complete defense. *See, e.g.,* Prosser, *Comparative Negligence,* 41 CALIF. L. REV. 1 (1953). Consistent with the national trend, contributory negligence is no longer a defense in this

jurisdiction. *Russell v. Hixon*, 117 N.H. 35, 40, 369 A.2d 192, 195 (1977).

"The New Hampshire legislature has indicated in its comparative negligence statute, that where a plaintiff's negligence is a relevant inquiry, and is found to exist, recovery should not be barred, but [should be] reduced in the ratio that the negligence of the plaintiff contributed to the injury." *Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145, 1150 (1st Cir. 1974). RSA 507:7-a (Supp. 1979) is recognized as the first statute in this country permitting a plaintiff to recover when he is equally or less responsible for his injury. *See* Note, *Comparative Negligence*, 81 COLUM. L. REV. 1668, 1673 n.30 (1981). This approach of permitting recovery where the plaintiff is equally at fault has gained much support and has been adopted in fourteen other states. *See* C. HEFT AND C. J. HEFT, COMPARATIVE NEGLIGENCE MANUAL 118–19 (Appendix II) (Supp. 1982).

The defendant urges us to adopt an interpretation of RSA 507:7-a (Supp. 1979) which would require the comparison of the plaintiff's conduct separately against the individual conduct of each of multiple tortfeasors named as defendants in a single lawsuit and found to be liable. RSA 507:7-a (Supp. 1979) states that a plaintiff will not be barred from recovery by his own negligence "if such negligence was not greater than the causal negligence of the defendant." PSNH contends that use of the singular word "defendant" is controlling on this issue. We do not find the use of the singular to be dispositive. With respect to statutory construction, RSA 21:3 specifically provides that words importing the singular may extend and be applied to several persons.

█ █ When construing an ambiguous statute, we look at both the legislative intent and the objective of the legislation. *State v. Flynn*, 123 N.H. 457, 464, 464 A.2d 268, 272 (1983). PSNH's approach is contrary to the basic policy of our comparative negligence statute, which allows recovery on an equal-fault basis and permits a plaintiff partly at fault in an accident resulting in his injury to be recompensed for the damages attributable to the fault of another, as long as the plaintiff's negligence was not the primary cause of the accident; accordingly, we reject their proffered construction of RSA 507:7-a (Supp. 1979). *See Wong v. Hawaiian Scenic Tours, Ltd.*, 642 P.2d 930, 933 (Haw. 1982).

This holding is consistent with our application of the principle of comparative causation to strict liability cases in *Thibault v. Sears, Roebuck & Co.*, 118 N.H. 802, 395 A.2d 843 (1978). In *Thibault*, we sanctioned the following approach with regard to comparative fault:

> "[T]he jury must weigh the plaintiff's misconduct, if any, and reduce the amount of damages by the percentage that the plaintiff's misconduct contributed to cause his loss or injury so long as it is not greater than fifty percent . . . . In multiple defendant cases, if recovery is allowed against more than one defendant, the jury shall apportion the loss in the ratio to which each liable defendant caused or contributed to the loss or injury to the amount of causation or liability attributed to all defendants against whom recovery is allowed."

*Id.* at 813, 395 A.2d at 850.

The apportionment of damages in this manner is recognized by courts and commentators as the unit or aggregate rule, and has been adopted in a majority of the States with the so-called modified comparative negligence approach adopted either by judicial decision or by statute. Note, *Comparative Negligence*, 81 COLUM. L. REV. at 1674 n.33 (1981); *see, e.g., Riddell v. Little*, 253 Ark. 686, 689, 488 S.W.2d 34, 36 (1972); *Wong v. Hawaiian Scenic Tours, Ltd.*, 642 P.2d at 933; *Graci v. Damon*, 6 Mass. App. Ct. 160, 169–70, 374 N.E.2d 311, 317, *aff'd.*, 376 Mass. 931, 383 N.E.2d 842 (1978); VT. STAT. ANN. tit. 12 § 1036.

■ The defendant submits that the legislature's intention in enacting RSA 507:7-a (Supp. 1979) was to adopt the same approach as followed by Wisconsin, a pioneer State in the area of comparative negligence, which by case law precluded recovery against any defendant whose negligence was found to be less than the plaintiff's. *See* Nixon, *The Actual "Legislative Intent" Behind New Hampshire's Comparative Negligence Statute*, 12 N.H.B.J. 17, 33 (1969). Although the defendant cites the author and sponsor of H.B. 166, enacted as RSA 507:7-a (Supp. 1979), as source for its construction of the statute, we are not bound by these assertions. It is recognized "that there is no necessary correlation between what the draftsman of the text of a bill understands it to mean and what members of the enacting legislature understand. . . ." 2A J. SUTHERLAND, STATUTES AND STATUTORY CONSTRUCTION § 48.12, at 215 (Sands ed. 1973). Significantly, the minutes of the house judiciary committee hearings, submitted by the defendant, indicate that Attorney Gross, speaking against the bill, was apprehensive that a plaintiff would be able to recover against a less negligent defendant in a multiple defendant case.

It is interesting to note that the Wisconsin Supreme Court has recently evaluated its own policy in the following manner:

> "The majority of the court has become convinced that comparing the negligence of the individual plaintiff to that of each individual tortfeasor—rather than comparing the negligence of the individual plaintiff to that of the combined negligence of the several tortfeasors who have collectively contributed to the plaintiff's injuries—leads to harsh and unfair results. . . ."

*May v. Skelly Oil Company*, 83 Wis. 2d 30, 38, 264 N.W.2d 574, 578 (1978). Although the Wisconsin Supreme Court later withdrew from this position in *Reiter v. Dyken*, 95 Wis. 2d 461, 473–74, 290 N.W.2d 510, 517 (1980), by its failure to adopt the unit rule, it should be pointed out that, at the time of *Reiter*, the Wisconsin Legislature had pending before it legislation designed to correct the unfairness pointed out in the *May* case.

■■ The concept of comparative negligence was enacted as law in 1969 in an effort to allocate more equitably the responsibility for injuries due to negligent conduct on the part of parties on both sides of a lawsuit. The previously existing concept of contributory negligence had been under attack because of the egregious results where the plaintiff's negligent conduct was deemed a complete bar to recovery. In holding that the plaintiff's conduct is to be compared against the conduct of all defendants who have been found liable by the jury, we are being consistent with the basic premise of comparative negligence and are reducing the likelihood that a plaintiff's negligence will in effect become a complete defense in a case involving multiple defendants, who, as a group, may be equally or more negligent than the plaintiff. *See* Note, *Comparative Negligence*, 81 COLUM. L. REV. at 1674 (1981).

■■ In regard to the defendant's objection to the special verdict form, this court previously has held "[i]n . . . complicated or multiple count negligence or strict liability cases, trial judges have the inherent power to use special questions and [special] verdicts to guide the jury and to aid in post-verdict review." *Thibault v. Sears, Roebuck & Co.*, 118 N.H. at 813, 395 A.2d at 850. We see no reason to disturb this rule or to inhibit the exercise of such inherent power of the trial court.

*Affirmed.*

All concurred.